UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
Dish Network L.L.C., Echostar Technologies
L.L.C., and NagraStar L.L.C.,

                                   Plaintiffs,

                                                         **REPORT AND**
                                                         **RECOMMENDATION**
-against-                                                11-CV-2894 (JS) (GRB)

David Friedman,

                                   Defendant.
---------------------------------------------------------X
**GARY R. BROWN, United States Magistrate Judge:**

        Plaintiffs Dish Network L.L.C. ("Dish Network"), Echostar Technologies L.L.C. ("Echostar"),

and NagraStar L.L.C. ("NagraStar") (collectively, "plaintiffs") brought this action against defendant

David Friedman ("defendant") for defendant's alleged unlawful circumvention of the Dish Network

security system in violation of the Digital Millennium Copyright Act, Communications Act of 1934, and

Electronics Communications Privacy Act.

        Before the undersigned is plaintiffs' motion for default judgment, which has been referred to the

undersigned by District Judge Joanna Seybert to issue a report and recommendation whether a default

judgment should be entered and for a determination of damages.

                                        **BACKGROUND**

        Plaintiffs commenced this action on June 16, 2011, alleging violations of the Digital Millennium

Copyright Act, 17 U.S.C. § 1201 *et seq.*; the Communications Act, 47 U.S.C. § 605 *et seq.*; and the

Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511 *et seq. See generally* Compl.,

Docket Entry ("DE") [1].  Plaintiffs generally allege that defendant purchased a service that permitted

him, using piracy software and an internet connection, to access copyright-protected Dish Network

programming without paying for it.  *Id.* ¶¶ 20- 26.

        Dish Network broadcasts subscription and pay-per-view video programming to customers via its

network of satellites.  *Id.* ¶¶ 9-10.  The programs Dish Network broadcasts are copyrighted.  *Id.* ¶ 12.  The

copyright-holders authorize Dish Network to protect the works it distributes from unauthorized viewing, *id.*, which Dish Network does by encrypting its signal before broadcast. *Id.* ¶ 13. Ordinary Dish Network subscribers contract with Echostar for the receiver, antenna, and other equipment necessary to receive the Dish Network signal. *Id.* ¶ 14. Dish Network purchases so-called "smart cards" from NagraStar, which it distributes to customers. *Id.* ¶ 15. The smart cards descramble the encrypted Dish Network signal and filter through the customer's particularized subscription. *Id.* ¶ 16.

Defendant is alleged to have engaged in a type of satellite piracy called "control word sharing" or "internet key sharing" ("IKS"). *Id.* ¶20. In IKS, the unauthorized end-user connects a video receiver to an internet connection. *Id.* The end-user connects to a remote pirate computer server via the internet, which server provides the end-user with the necessary control words to decrypt Dish Network programming. *Id.* This pirate server has extracted the Dish Network control words through a legitimate Dish Network connection. *Id.* ¶ 21. The pirate server will then send these control words out to end-users whose computers and receivers are programmed to apply the code words to unscramble the Dish Network signal without a paid subscription. *Id.*

Defendant allegedly subscribed to a piracy service operated by www.dark-angel.ca ("Dark Angel"), through which Defendant obtained the control words to descramble Dish Network programming. *Id.* ¶¶ 8, 25. Dish Network obtained Dark Angel's business records and the computer server that provided end-users with the pirated code words. *Id.* ¶ 23. The business records show that defendant purchased a subscription to Dark Angel's services on or around May 23, 2010. *Id.* ¶ 24; *see also* Decl. of Steve Rogers Ex. 2, Dec. 14, 2011, DE [9] (hereinafter "Rogers Declaration") (attaching receipt that lists subscription to "3 Months DISH Fire-N-iCE For 5 Receivers"); *id.* Ex. 3 (attaching internal Dark Angel email acknowledging "New Dark Angel IKS Order" for username "daveinli," and listing identical Order No. as that on receipt). Defendant then used the pirated Dark Angel control words to view Dish Network programming without authorization. Compl. ¶ 26; *see also* Rogers Decl. Ex. 4 (showing Dark Angel database entry linking dealer "daveinli" to subscriber "davesv8000"); *id.* Ex. 5 (showing Dark Angel database entries listing eight connections by user "davesv800" between May 27, 2010 and July 28, 2010,

inclusive).

Plaintiffs allege that defendant's conduct gives rise to three causes of action, but on this motion seek recovery only under the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a). Plaintiffs allege that defendant intentionally intercepted a wire, oral, or electronic communication in violation of the ECPA. Compl. ¶¶ 37-29. Plaintiffs alleged that such violation subjects defendant to liability for damages, including punitive damages, pursuant to 18 U.S.C. § 2520. *See id.* at Wherefore Cl.

Plaintiffs attempted twice to serve defendant personally at the address listed on the receipt for Dark Angel services, eventually affixing a copy of the summons and complaint to the door on August 6, 2011 and mailing copies to the same address two days later. *See* Summons, DE [3]. Plaintiffs also make the requisite assertions that defendant is neither an infant, incompetent, nor on active duty in the military. Mathendra M. Ramgopal Declaration in Support ¶¶ 6-7, DE [6] ("Ramgopal Decl."). Defendant failed to answer or file other responsive pleading. The clerk noted the entry of default against defendant on September 21, 2011. Entry of Default, DE [5]. On September 30, 2011 Plaintiffs filed a Motion for Default Judgment. Mot. for Default J., DE [6]. District Judge Joanna Seybert referred the Motion for Default to United States Magistrate Judge Arlene Lindsay for a report and recommendation as to whether to grant the motion and a determination of what, if any, damages should be awarded. *See* Order of Referral, DE [7]. Magistrate Judge Lindsay directed the parties to file submissions, including memoranda of law and affidavits, in support of their positions regarding damages. *See* Order, Oct. 18, 2011, DE [8]. This matter was assigned to the undersigned as Magistrate shortly thereafter. Plaintiffs filed their submission related to damages on December 14, 2011. Memo. in Support, DE [9].

## DISCUSSION

### Standing of Plaintiffs NagraStar and Echostar

As a preliminary matter, plaintiffs NagraStar and Echostar lack standing to seek the relief sought on this motion. Section 2511(1)(a) of the ECPA protects "electronic communications"; similarly section 2520(a) entitles the "person whose … electronic communication is intercepted" to seek relief. 18 U.S.C. §§ 2511(1)(a), 2050. Neither Echostar (distributor of receiver equipment to customers) nor NagraStar

(from whom Dish Network purchases smart cards) distribute "electronic communications" within the meaning of the ECPA. *See* 18 U.S.C. § 2510(12) and discussion *infra* p. 7. NagraStar and Echostar thus cannot satisfy "the requirement that [their] complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75 (1982)). Accordingly, section 2511 does not protect the products of NagraStar or Echostar, and neither has a private right of action under section 2050.

### Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure ("Rule 55") provides a two-step process for obtaining a default judgment." *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005). First, "Rule 55(a) empowers the clerk of the court to enter a default against a party that has not appeared or defended. Having obtained a default from the clerk of the court, a plaintiff must next seek a judgment by default under Rule 55(b)." *Id.* Where the damages sought are not a sum certain, the moving party must apply to the Court pursuant to Rule 55(b)(2) to request default judgment. Fed. R. Civ. P. 55(b)(2). Here, plaintiffs satisfied the procedural prerequisites to a default judgment by properly serving defendant, then requesting entry of default when defendant did not appear in the action. *See supra* p. 3.

A party's default constitutes a concession of all of the well-pleaded allegations of the complaint, except as to the amount of damages. *Greyhound Exhibitgroup v. E.L. U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992), *cert. denied,* 506 U.S. 1080, (1993). The district court need not agree that the alleged facts constitute a valid cause of action, however. *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). "Indeed, [the Second Circuit] recently suggested that, prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." *Mickalis Pawn Shop*, 645 F.3d at 137 (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (internal quotation marks omitted).

**Liability Pursuant to the Electronic Communications Privacy Act**

Any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept. . . any electronic communication" commits a violation of the ECPA. 18 U.S.C. § 2511(1)(a). The ECPA defines "electronic communication" to include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12) (listing certain exceptions not applicable here). The term is widely viewed to include encrypted satellite transmissions. *See, e.g.*, *United States v. Lande*, 968 F.2d 907, 909 (9th Cir. 1992). To "intercept" means to acquire the contents of the wire, electronic, or oral communication "through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4); *see also* § 2510(5) (defining "electronic, mechanical, or other device" to include "any device or apparatus which can be used to intercept a wire, oral, or electronic communication," with limited exceptions such as hearing aids and authorized signal receivers). Thus, courts have found that employing an unauthorized descrambler to view encrypted satellite television programming "intentionally intercepts" an "electronic communication" within the meaning of the ECPA. *See, e.g.*, *Lande*, 968 F.2d at 909-910.

Section 2520(a) of Title 18 has been widely held to permit satellite television broadcasters to pursue civil litigation against unauthorized end-users under section 2511. *See, e.g.*, *DirecTV, Inc. v. Bennett*, 470 F.3d 565, 567 (5th Cir. 2006) (citing cases of the 3rd and 4th Circuits); *see also DirecTV, Inc. v. Barczewski*, 604 F.3d 1004, 1005 (7th Cir. 2010) (citing, *inter alia*, *DIRECTV, Inc. v. Webb*, 545 F.3d 837 (9th Cir. 2008)). Section 2520(a) provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity [...] which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). "To state a claim under Section 2520(a) for a violation of §2511, the plaintiff must plead facts showing that the defendant intentionally intercepted the plaintiff's satellite television programming without proper authorization." *Dish Network L.L.C. v. Sanchez*, 2012 U.S. Dist. LEXIS 79932 (E.D. Cal. June 8, 2012) (citing *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844-845 (9th Cir.

5

2008)).  Even circumstantial evidence of piracy is sufficient to show a violation.  *Webb*, 545 F.3d at 844-845.

The well-pleaded allegations of the complaint in this action demonstrate defendant's liability to Dish Network under the ECPA.  Dish Network broadcasts television programming via its network of satellites, *see supra* p. 1, an electronic communication under the ECPA.  *See, e.g.*, *Lande*, 968 F.2d at 909 (citing 18 U.S.C. § 2510(12)).  Defendant used a mechanical device, his internet connection and presumably a receiver and satellite dish, to acquire the contents of Dish Network's programming, *see supra* p. 2, meaning defendant "intentionally intercepted" Dish Network's electronic communications within the meaning of the ECPA.  *See* 18 U.S.C. §§ 2510(4), 2510(5); *Lande*, 968 F.2d at 909-10.  Dish Network has the authority to protect the programming it broadcasts from unauthorized reception and viewing.  *See supra* p. 1.  Dish Network accordingly constitutes "[a] person whose … electronic communication is intercepted" within the meaning of the ECPA, and is entitled to seek appropriate relief from defendant for his interception.  *See, e.g.*, *Bennett*, 470 F.3d at 567.

**Damages**

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  *See Greyhound*, 973 F.2d at 158.  To establish damages upon a default, the movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."  *Greyhound,* 973 F.2d at 159.  "The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'"  *LaBarbera v. Les Sub-Surface Plumbing, Inc.*, No. 06-CV-3343, 2008 WL 906695, at *3 (E.D.N.Y. Apr. 3, 2008) (quoting *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

Dish Network seeks damages under 18 U.S.C. § 2520(c)(2).  *See* Memo. in Support 6.  That section provides that "the court may assess as damages whichever is the greater of-- (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $ 100 a day for each day of violation or $ 10,000."

18 U.S.C. § 2520(c)(2).  The District of Connecticut summarized the damage award under this section in a 2005 case involving similar circumstances to the case at bar:

> DIRECTV has not presented evidence of the actual damages suffered, and there is no basis for finding that the defendant profited from the violation.  Nor is there any evidence of the duration of defendant's actual use of the devices to intercept DIRECTV's communications, making calculation of statutory damages "for each day of violation" speculative. The statutory damage award of $ 10,000, therefore, is the presumptive amount at issue.

*DIRECTV, Inc. v. Neznak*, 371 F. Supp. 2d 130, 134 (D. Conn. 2005).  In  *Neznak*, DIRECTV sought damages under the Communications Act -- a statutory award of $1,000 for each violation -- in addition to the ECPA.  *Id.* at 133-134.  The Court there determined that the statutory damages for six violations ($6,000) were more appropriate than the larger sum due under the ECPA.  *Id.* at 134.

DISH Network can only describe its actual damages here in broad terms.  Dish Network's average monthly revenue per authorized subscriber is $70, Duval Decl. ¶ 11, but as Dish Network only recovered a limited record of defendant's access to the Dark Angel server, the costs of defendant's action can hardly be quantified.  Dish Network also claims that it incurs general "security costs" in the "each year to protect its programming" from satellite piracy, Duval Decl. ¶ 6 -- again, a difficult figure to judge in light of the narrow sample of defendant's conduct here.  Accordingly, actual damages do not form a basis, on the record, that would exceed the statutory award of $10,000.

Dish Network can only identify eight days of violations.  At $100 per day, an award of damages on a per-violation basis would not exceed $10,000.  Thus, much as in *Neznak*, "[t]he statutory damage award of $10,000…is the presumptive amount at issue."  371 F. Supp. 2d at 134.

The Court agrees with the position of other Courts that "awarding no damages at all would be an abuse of discretion."[1]  *DISH Network L.L.C. v. DelVecchio*, 831 F.Supp.2d 595, 600-601 (W.D.N.Y. 2011) (citing *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318 (4th Cir.2008)).  Accordingly, the $10,000 award Dish Network seeks is appropriate.

---

[1] Plaintiffs no doubt seek to avoid the result in *Neznak*, in which the Court, given the option of two statutory damages awards, chose the lower.  *See* 371 F. Supp. 2d at 134.  In this case, the $10,000 ECPA award is virtually equal to the likely award under the Communications Act ($8,000), and so is appropriate.

**Injunctive Relief**

Plaintiffs also seek injunctive relief.  The Court finds that Dish Network's request for a permanent injunction is appropriate.  The ECPA authorizes courts to grant appropriate relief including preliminary and other equitable or declaratory relief as may be appropriate. 18 U.S.C. § 2520(b)(2).  The criteria for the issuance of a permanent injunction requires a plaintiff demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Irreparable harm is "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages."  *Rodriguez v. DeBuono*, 162 F.3d 56, 61 (2d Cir. 1998) (per curiam) (internal quotation marks omitted).

As one court examining a similar matter concluded:

> The Court finds that based on the Defendant's conduct, Plaintiffs have suffered irreparable injury based on the piracy of their service. In addition, the damages provided for above, while significant, are inadequate to prevent future piracy without injunctive relief. The only hardship to Defendant from this injunction would be to prevent him from engaging in further illegal activity, so the balance clearly weighs in Plaintiffs' favor. The public interest is not disserved by an injunction as it will protect copyrights and help enforce federal law. The Court finds the criteria for a permanent injunction have been met and therefore orders Defendant be permanently enjoined from intercepting Plaintiffs' encrypted satellite communications or assisting anyone else in doing so.

*DISH Network L.L.C. v. DelVecchio*, 831 F.Supp.2d 595, 602 (W.D.N.Y. 2011).  The equities here lead, inescapably, to the same conclusion.

## CONCLUSION

It is respectfully recommended that Dish Network's motion for a default judgment be granted and that Dish Network be awarded statutory damages in the amount of $10,000.  It is further recommended that Dish Network be granted the permanent injunction sought.  With respect to the other two plaintiffs, it is respectfully recommended that their motion be denied.

**OBJECTIONS**

The Clerk of the Court is hereby directed to mail a copy of this Report and Recommendation to the representatives of each of the parties.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.**  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated:  Central Islip, New York
        August 31, 2012

                                                    /s/ Gary R. Brown
                                                    GARY R. BROWN
                                                    United States Magistrate Judge

9